```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/18/2022
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ROXANNE HANCOCK, on behalf of herself :
and all others similarly situated, :
: 21-CV-7085 (RA) (RWL)
Plaintiffs, :
:
- against - : **DECISION AND ORDER:**
: <u>**ATTORNEY'S FEES**</u>
I.C. SYSTEM, INC.; AND JOHN DOES :
1-25, :
:
Defendants. :
------------------------------------------------------------X

**ROBERT W. LEHRBURGER, United States Magistrate Judge.**

This decision addresses Plaintiff's application for attorney's fees and costs following acceptance of an offer of judgment in this action brought pursuant to the Fair Debt Collection Protection Act, 15 U.S.C. § 1692, et seq. ("FDCPA"). As set forth below, the Court awards Plaintiff attorney's fees in the amount of $11,297 and costs in the amount of $495.76.

## BACKGROUND

Plaintiff Roxanne Hancock ("Hancock" or "Plaintiff") filed this case after having received a letter from Defendant I.C. System, Inc. ("ICS") seeking to collect a debt of $59.00 owed to Spectrum for unreturned equipment. Hancock claimed that she owed Spectrum an amount less than $59.00 and that ICS's letter failed to properly inform her of consequences of disputing the debt. As revealed in discovery, Hancock had documentation showing that she had returned the equipment to Spectrum before the account was referred to ICS for collection. Although Hancock could have provided the

1

same documentation to ICS or Spectrum after receiving ICS's letter but before filing suit, she did not do so.

Hancock filed her case as a class action on August 22, 2021. ICS answered the complaint, and the parties proceeded to discovery. Hancock served interrogatories, document requests, and requests to admit. A substantial number of the requests focused on class discovery. Hancock also insisted on receiving class related information from ICS as a condition to engage in meaningful settlement negotiations. (Dkt. 11-1.)

On January 18, 2022, ICS served an offer of judgment pursuant to Fed. R. Civ. P. 68. Specifically, ICS offered to have judgment entered against it in the amount of $1,050.00 "arising from Plaintiff's individual claims against Defendant" and an "additional amount for reasonable attorney's fees and taxable costs incurred by Plaintiff in an amount to be determined by agreement of the parties, and if the parties cannot agree, by the Court upon Motion by Plaintiff." (Dkt. 19, Ex. A.) Hancock accepted the offer on January 26, 2022, and the Court entered judgment the next day. The parties could not agree on the amount of attorney's fees. Accordingly, Plaintiff filed the instant motion, seeking attorney's fees in the amount of $16,004.32, which is now fully briefed. ICS asserts that a reasonable attorney's fees award in this case should be $4,370.99.

The matter was referred to me for resolution of a non-dispositive motion on February 3, 2022. (Dkt. 23.)

## LEGAL STANDARDS

The plain language of the FDCPA authorizes an award of reasonable attorney's fees and costs as determined by the Court. *See* 15 U.S.C. § 1692k(a)(3) (party prevailing in FDCPA action is entitled to "the costs of the action, together with a reasonable

attorney's fee as determined by the court"); *accord Jacobson v. Healthcare Financial Services, Inc.*, 516 F.3d 85, 95 (2d Cir. 2008) ("The FDCPA provides for fee-shifting as a matter of course to successful plaintiffs....").

### A.     The Lodestar Calculation

Both the Second Circuit and the Supreme Court "have held that the lodestar – the product of a reasonable hourly rate and the reasonable number of hours required by the case – creates a 'presumptively reasonable fee.'" *Millea v. Metro-North Railroad Co.*, 658 F.3d 154, 166 (2d Cir.2011) (quoting *Arbor Hill v. County Of Albany And Albany County Board. Of Elections*, 522 F.3d 182, 183 (2d Cir.2008)). "The reasonable hourly rate is the rate a paying client would be willing to pay." *Arbor Hill*, 522 F.3d at 190.

In determining a fee award, courts consider case-specific factors to help determine the reasonableness of the hourly rates and the number of hours expended. Such factors include:

> the complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively (taking account of the resources being marshaled on the other side but not endorsing scorched earth tactics), the timing demands of the case, whether an attorney might have an interest (independent of that of his client) in achieving the ends of the litigation or might initiate the representation himself, whether an attorney might have initially acted pro bono (such that a client might be aware that the attorney expected low or non-existent remuneration), and other returns (such as reputation, etc.) that an attorney might expect from the representation.

*Arbor Hill*, 522 F.3d at 184. To arrive at a lodestar calculation, "[t]he party seeking an award of [attorneys'] fees should submit evidence supporting the hours worked and rates claimed." *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S. Ct. 1933, 1939 (1983). Hancock has done so here, through the certifications of her attorney, Joseph K. Jones.

3

*See* Certification of Joseph K. Jones dated Jan. 31, 2022 ("Jones Cert.") and Reply Certification of Joseph K. Jones dated February 21, 2022 ("Jones Reply Cert."). (Dkts. 32, 34.)

**B.      Adjustment For Partial Success**

The Supreme Court has held "that the extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees." *Hensley*, 461 U.S. at 440, 103 S. Ct. 1943; *accord Chabad Lubavitch Of Litchfield County, Inc. v. Litchfield Historic District Commission*, 934 F.3d 238, 245 (2d Cir. 2019) (affirming 50% reduction of fee award on the basis that "[w]hen a plaintiff has achieved partial success, the most important factor in determining a reasonable fee for a prevailing plaintiff is the degree of success obtained") (internal quotation marks, modifications, and citations omitted); *Kassim v. City Of Schenectady*, 415 F.3d 246, 256 (2d Cir. 2005) ("Our circuit has thus clearly adopted the view … that a district judge's authority to reduce the fee awarded to a prevailing plaintiff below the lodestar by reason of the plaintiff's 'partial or limited success' is not restricted either to cases of multiple discrete theories or to cases in which the plaintiff won only a nominal or technical victory"); *Rivera v. Corporate Receivables, Inc.*, 540 F. Supp.2d 329, 333 (D. Conn. 2008) (reducing legal fees by 70% in FDCPA case where plaintiff succeeded on only one of seven FDCPA claims at trial).

If a court chooses to make downward adjustments, it may either reduce the overall award or attempt to identify specific hours that should be eliminated. *Hensley*, 461 U.S.at 436-37, 103 S. Ct. at 1941. The law also requires a court to exclude claimed hours from the lodestar calculation that it finds to be "excessive, redundant, or otherwise unnecessary." *Reiter v. Metropolitan Transportation Authority Of State Of New York*, No.

4

01-CV-2762, 2007 WL 2775144 at *9 (S.D.N.Y. Sept. 25, 2007) (quoting *Hensley*, 461 U.S. at 434, 103 S.Ct. at 1933). There is no precise rule or formula for making these determinations, and, because "it is unrealistic to expect a trial judge to evaluate and rule on every entry in an application," a court may apply an across-the-board percentage cut "as a practical means of trimming fat from a fee application." *New York State Association For Retarded Children v. Carey*, 711 F.2d 1136, 1146 (2d Cir.1983).

## C.  Proportionality

Although the lodestar may be adjusted for limited success, it should not be adjusted based on "lack of proportion between the amount of attorney's fees requested and the size of the award attained, as the FDCPA, like many other consumer protection and civil rights statutes, 'was enacted in part to secure legal representation for plaintiffs whose ... injury was too small, in terms of expected monetary recovery, to create an incentive for attorneys to take the case under conventional fee arrangements.'" *Rivera*, 540 F. Supp.2d at 338 (quoting *Kassim*, 415 F.3d at 252); *accord* Millea, 658 F.3d at 169. Accordingly, the Court has not considered proportionality at all in arriving at its decision.

## DISCUSSION

### A.  Hourly Rates

The Court begins with assessment of the hourly rates sought by Hancock. Courts assess the reasonableness of a proposed hourly rate by considering the prevailing market rate for lawyers in the district in which the ruling court sits. *Polk v. New York State Department of Correctional Services*, 722 F.2d 23, 25 (2d Cir. 1983). "The rates used by the court should be current rather than historic hourly rates." *Reiter v. Metropolitan Transportation Authority Of New York*, 457 F.3d 224, 232 (2d Cir. 2006) (internal

quotation marks omitted). "[C]ourts may conduct an empirical inquiry based on the parties' evidence or may rely on the court's own familiarity with the rates if no such evidence is submitted." *Wong v. Hunda Glass Corp.*, No. 09-CV-4402, 2010 WL 3452417, at *2 (S.D.N.Y. Sept. 1, 2010) (internal quotation marks omitted). Additionally, "the range of rates that plaintiff's counsel actually charges their clients … is obviously strong evidence of what the market will bear." *Rozell v. Ross-Holst*, 576 F. Supp. 2d 527, 544 (S.D.N.Y. 2008); *see also Lilly v. County Of Orange*, 910 F. Supp. 945, 949 (S.D.N.Y. 1996) ("The actual rate that counsel can command in the market place is evidence of the prevailing market rate").

Hancock was represented in this action by Jones, Wolf & Kapasi, LLC and seeks reimbursement of fees for the work of two attorneys from that firm: Joseph K. Jones, who billed at an hourly rate of $575, and Benjamin J. Wolf, who billed at an hourly rate of $475. The billing records submitted reflect no tasks performed by other attorneys, paralegals, or administrative staff.

Both attorneys are well-versed in FDCPA practice, having been counsel, collectively, in over 650 DCPA cases in New York and New Jersey. (Jones Cert. ¶ 4.) Both have also been appointed class counsel in numerous cases. (Jones Cert. ¶ 4.) The hourly rates of Jones and Wolf sought in this case are their "actual hourly rates charged by counsel in complex and contingent litigation" like the instant case in which the attorneys took the case "upon a complete contingency fee arrangement." (Jones Cert. ¶¶ 9, 11.) That statement is somewhat of a non-sequitur – a contingency case typically is one in which the attorney charges a percentage of the recovery, if any. In such cases, the attorney does not charge their client a fee based on an hourly rate. Hancock's counsel

thus has not presented any evidence that paying clients have paid or would pay the hourly rates sought here.

As for whether Jones and Wolf's hourly rates are in line with rates charged by other attorneys for FDCPA cases in this metropolitan area, neither Jones certification offers any relevant evidence. Rather, counsel merely asserts in conclusory fashion that the rates are "consistent with the rates charged by other attorneys of similar experience and qualifications in this geographical area." (Jones Cert ¶ 9.) In fact, however, the rates requested exceed the norm for this area. "Courts in this district have found, with respect to attorneys' fees in FDCPA cases, reasonable hourly rates to be approximately $300-$450 for partners, $200-$325 for senior associates, and $100–$200 for junior associates." *Lichter v. Bureau Of Accounts Control, Inc.*, 19-CV-4476, 2021 WL 5115259, at *5 (S.D.N.Y. Nov. 2, 2021) (internal quotation marks omitted) (awarding $450 for partners and $225-$325 for associates); *see also Greifman v. Grossman And Karaszewski*, PLLC, No. 19-CV-04625, 2021 WL 1226420, at *3 (S.D.N.Y. Mar. 31, 2021) (awarding $450 for partners, $325 for senior associates, and $250 for junior associates).[1] Hancock's attorneys refer to previous FDCPA cases in which they have been awarded attorney's fees based on equivalent or similar hourly rates as invoked in the instant case. (*E.g.*, Jones Reply Cert. Exs. B-C.[2]) Those cases, however, both involved approval of class-

---

[1] ICS cites FDCPA cases finding considerably lower hourly rates, such as $300 per partner, to be reasonable. (Dkt. 35. at 11.) Those cases, however, date from 2012 and 2013 and therefore do not reflect current prevailing rates.

[2] Exhibits B and C to the Jones Reply Certification are orders approving FDCPA class action settlements from two cases. Plaintiff's reply brief at page 6 asserts that in one of those cases, decided eight years ago, Jones was awarded a $515 hourly rate and Wolf was awarded a $425 hourly rate, and that in a more recent case, the rates awarded were

7

wide settlements, and there is no indication that any party or class member contested the fees sought.

In light of the foregoing, the Court finds reasonable hourly rates for the lodestar calculation to be $450 for Jones and $400 for Wolf (who has less experience than Jones).

**B.    Hours Worked**

To determine the compensable hours, "the court must examine the hours expended by counsel and the value of the work product of the particular expenditures to the client's case." *Tlacoapa v. Carregal*, 386 F. Supp. 2d 362, 371 (S.D.N.Y. 2005) (citing *Gierlinger v. Gleason*, 160 F.3d 858, 873, 876 (2d Cir. 1998)).  A court should exclude from the lodestar calculation "excessive, redundant or otherwise unnecessary hours." *Quaratino v. Tiffany And Co.*, 166 F.3d 422, 425 (2d Cir. 1999); *see also Luciano v. Olsten Corp.*, 109 F.3d 111, 116 (2d Cir. 1997) ("If the district court concludes that any expenditure of time was unreasonable, it should exclude these hours from the lodestar calculation").  "In making this examination, the district court does not play the role of an uninformed arbiter but may look to its own familiarity with the case and its experience generally as well as to the evidentiary submissions and arguments of the parties."

---

$575 and $475 respectively (the same rates in the instant case).  The brief cites Exhibits B and C in support.  Those exhibits, however, are only orders approving the class action settlements; they do not identify the hourly rates involved, and neither Jones certification identifies the rates received in those cases.  There thus is no evidence before the Court that the rates asserted in the brief were actually awarded in those cases.  That said, the Court has, by review of the publicly available electronic case record of those cases, determined that the representation is accurate.  Plaintiff's reply brief also asserts that the rates proffered by Jones and Wolf in the instant case are the same as those approved in several FDCPA cases in New Jersey federal courts resolved during 2021.  Plaintiff does not provide any information about those cases, however, other than their caption.  The Court thus has no basis for assessing the context in which the fees were awarded.

*Gierlinger*, 160 F.3d at 876 (quoting *DiFilippo v. Morizio,* 759 F.2d 231, 235–36 (2d Cir. 1985)). "The relevant issue ... is not whether hindsight vindicates an attorney's time expenditures, but whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992); *see also Mugavero v. Arms Acres, Inc.*, No. 03-CV-5724, 2010 WL 451045, at *6 (S.D.N.Y. Feb. 9, 2010) (same).

Here, the time records submitted reflect that Jones and Wolf together worked 32.28 hours on the case. Most of the work was performed by Wolf, who expended 25.68 hours to Jones' 6.7 hours. Tasks included, among others, drafting the complaint, reviewing and drafting correspondence, drafting and responding to discovery requests, and seeking a protective order. ICS asserts that the hours claimed should be reduced by 50% because this matter is a "stock FDCPA case" that used "generic, cut and paste requests." (Dkt. 35 at at 7-8.) As an example, ICS points out that counsel incurred 7.1 hours for drafting discovery responses, the majority of which consisted of the identical one-sentence response. A review of Hancock's answers to ICS's requests confirms that observation but does not account for time taken to consider each request and to formulate responses to the requests that did not receive the same answer. (*See* Dkt. 35, Ex. 7.) ICS also points to Hancock's "boilerplate" discovery requests to ICS. The Court agrees with that characterization to some extent in that most of the requests appear to be ones that could be used for almost any FDCPA case and adapted simply by swapping out names of the parties. (*See* Dkt. 35, Exs. 3-6.) Nonetheless, the Court has no basis to conclude that the time spent, which overall is modest, was over-stated or unreasonable.

9

**C.     Adjustment To Hours**

The Court does find, however, that an adjustment of hours is warranted. The Court agrees with ICS that a reduction should be made because a substantial part of the case was geared to a class action, which never came to fruition and for which no payment was made as part of the offer of judgment. By her own admission, Hancock affirms that "[h]ere, and prior to Defendant's Offer of Judgment, Plaintiff was focused on litigating this case as a class action." (Dkt. 33 at 8.) Hancock accepted, however, an offer of judgment arising solely from "Plaintiff's individual claims." (Dkt. 19, Ex. A.) Hancock thus achieved only limited success. Consistent with being "focused on litigating … a class action," much, although certainly not all, of Hancock's discovery targeted class action evidence. Being that "the extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees," *Hensley*, 461 U.S. at 440, 103 S. Ct. 1943, Hancock and her counsel should not be rewarded for time spent on class-action work that proved to be of little or no relevance.

In making an adjustment for limited success and unnecessary work, the Court cannot determine from the billing records the specific hours spent on class vs. individual claims. The Court thus finds it necessary to apply an "across-the-board" percentage cut. *Carey*, 711 F.2d at 1146. The 50% reduction sought by ICS, however, cuts too deep. Even if the case had not been filed as a class action, many of the same tasks would have to have been performed – drafting and filing the complaint; issuing and responding to discovery requests; corresponding with the client, opposing counsel, and the Court; and considering the offer of judgment. And to the extent that counsel employed boilerplate requests and other material, as ICS argues, the time devoted to class-oriented discovery

and pleadings would be far less than if the work were otherwise sui generis or highly customized. Accordingly, the Court finds a 15% reduction to be reasonable. That adjustment brings the number of reasonable hours to 27.52. Making the adjustment commensurate with the number of hours worked by each attorney results in 5.7 hours for Jones (85% of 6.7) and 21.83 hours for Wolf (85% of 25.68).

Taking into account the adjustments to the hourly rates and the number of hours, the total reasonable fee award is (5.7 x $450) + (21.83 x $400) = $11,297.

**B.   Costs**

Plaintiff seeks $495.76 in costs consisting of the court filing fee, service of the complaint and summons, and postage. (Jones Cert. ¶ 14 and Ex. A.) Those expenses are routinely recoverable as litigation costs. *See e.g., Malletier v. Artex Creative International Corp.*, 687 F. Supp. 2d 347, 365 (S.D.N.Y. 2010) (costs such as filing fees, shipping costs, and research fees are "typically awarded") (citing *Arbor Hill*, 369 F.3d at 98); *Kapoor v. Rosenthal*, 269 F. Supp.2d 408, 415-16 (S.D.N.Y. 2003) (approving costs of filing and service of process fees); *Shannon v. Fireman's Fund Insurance Co.,* 156 F. Supp. 2d 279, 305 (S.D.N.Y. 2001) (reimbursing plaintiff for filing fees and shipping costs). ICS does not challenge any cost amounts, and the Court finds them to be recoverable. Accordingly, Hancock is awarded $495.76 in costs.

## CONCLUSION

For the foregoing reasons, Plaintiff is awarded $11,297 in attorney's fees and $495.76 in costs, for a total award of $11,792.76. To the extent not expressly discussed above, the Court has considered the parties' arguments and found them to be without merit.

SO ORDERED.

_____
ROBERT W. LEHRBURGER
UNITED STATES MAGISTRATE JUDGE

Dated: March 18, 2022
       New York, New York

Copies transmitted this date to all counsel of record.